UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARTIN EMMETT FITZPATRICK,<br><br>Petitioner,<br><br>v.<br><br>WARDEN,<br><br>Respondent. | No.  2:17-cv-02713 KJM AC<br><br><br>FINDINGS AND RECOMMENDATIONS |

Petitioner is a California state prisoner proceeding pro se with an application for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.  The action proceeds on the original petition, ECF No. 1, which challenges petitioner's 2014 conviction for multiple offenses involving the sexual abuse of his daughter.  Respondent has answered.  ECF No. 18.  Petitioner did not file a traverse.

BACKGROUND

Petitioner was arrested for sex offenses against his 10-year-old daughter, K.F., on August 27, 2013, in Sacramento County.  During interrogation at the police station, petitioner initially denied the molestation allegations and later admitted multiple sex acts with K.F.

On August 21, 2014, petitioner was charged in an amended information with four counts of sexual intercourse or sodomy with a child 10 years old or younger (Counts One through Four) (Cal. Penal Code § 288.7(a)); five counts of sexual penetration or oral copulation with a child 10 years old or younger (Counts Five through Nine) (Cal. Penal Code §§ 288.7(b) and 289); and one

1

count of inflicting great bodily harm on a child (Count Ten) (Cal. Penal Code § 273(a)).  1 CT 85-90.[1]  On the same date, the defense moved to exclude petitioner's confession as involuntary.  1 CT 115-124.  The motion was denied following an evidentiary hearing, 1 RT 74-108,[2] and the case went to trial.

The jury heard evidence of the following facts.[3]  In 2012 petitioner moved to Sacramento from Boise with his 10-year-old daughter K.F. and her two younger siblings.  While in Sacramento, petitioner molested K.F.  He had vaginal intercourse with his daughter "[i]f not every day, [then] every other day."  He once sodomized K.F. and at least 10 times put his finger in her vagina.

K.F. moved back to Idaho in 2013 and told her mother about the molestations.  K.F.'s mother contacted the police, who interviewed K.F. about the molestations.

Officers also recorded a phone call between K.F. and petitioner.  During the call, K.F. told petitioner she wanted him to promise not to "touch [her] anymore."  Petitioner replied, "Of course."  K.F. asked if he was sorry and petitioner said: "Yes, very.  Are you setting me up?"  K.F. denied it and petitioner replied: "Well, I don't remember touching you sweetie, like that."  When K.F. reminded him of how he used to touch her, petitioner said: "No, honey.  All I remember is - is loving you sweetheart."

Following the interviews with K.F. and the phone call, the Sacramento police arrested petitioner. During his interrogation at the police station, defendant admitted molesting K.F.

Petitioner testified in his own defense and denied molesting K.F.

On September 18, 2014, the jury convicted petitioner on Counts One through Three (involving acts of sexual intercourse) Four (involving an act of sodomy), Six and Seven

////

---

[1] "CT" refers to the Clerk's Transcript on Appeal, Volumes I through III, located at ECF Nos. 19-11 through 19-13.

[2] "RT" refers to the Reporter's Transcript on Appeal, Volumes I through, located at ECF Nos. 19-17 through 19-10.

[3] This factual summary is adapted from the opinion of the California Court of Appeal, Lodged Doc. 1 (ECF No. 19-1) at 2.  Due to the nature of the sole claim before this court, a more detailed recitation of the evidence is unnecessary.

(involving acts of digital penetration). Petitioner was acquitted of Counts Five, Eight, Nine and Ten.

On October 17, 2014, the court imposed consecutive terms of 25 years to life for the four counts of sexual intercourse or sodomy. For the two counts of sexual penetration, the court imposed consecutive terms of 15 years to life, for an aggregate sentence of 130 years to life. 2 CT 392.

I.      Post-Conviction Proceedings

Petitioner timely appealed, and the California Court of Appeal affirmed the judgment of conviction on March 13, 2017. Lodged Doc. 1 (ECF No. 19-1). The California Supreme Court denied review on May 17, 2017. Lodged Doc. 6.

STANDARDS GOVERNING HABEAS RELIEF UNDER THE AEDPA

28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), provides in relevant part as follows:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a state court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

The statute applies whenever the state court has denied a federal claim on its merits, whether or not the state court explained its reasons. Harrington v. Richter, 562 U.S. 86, 99 (2011). State court rejection of a federal claim will be presumed to have been on the merits absent any indication or state-law procedural principles to the contrary. Id. (citing Harris v. Reed, 489 U.S. 255, 265 (1989) (presumption of a merits determination when it is unclear whether a decision appearing to rest on federal grounds was decided on another basis)). "The presumption may be overcome when there is reason to think some other explanation for the state court's decision is more likely." Id. at 99-100.

3

The phrase "clearly established Federal law" in § 2254(d)(1) refers to the "governing legal principle or principles" previously articulated by the Supreme Court. Lockyer v. Andrade, 538 U.S. 63, 71-72 (2003). Only Supreme Court precedent may constitute "clearly established Federal law," but courts may look to circuit law "to ascertain whether…the particular point in issue is clearly established by Supreme Court precedent." Marshall v. Rodgers, 569 U.S. 58, 64 (2013).

A state court decision is "contrary to" clearly established federal law if the decision "contradicts the governing law set forth in [the Supreme Court's] cases." Williams v. Taylor, 529 U.S. 362, 405 (2000). A state court decision "unreasonably applies" federal law "if the state court identifies the correct rule from [the Supreme Court's] cases but unreasonably applies it to the facts of the particular state prisoner's case." Id. at 407-08. It is not enough that the state court was incorrect in the view of the federal habeas court; the state court decision must be objectively unreasonable. Wiggins v. Smith, 539 U.S. 510, 520-21 (2003).

Review under § 2254(d) is limited to the record that was before the state court. Cullen v. Pinholster, 563 U.S. 170, 180-181 (2011). The question at this stage is whether the state court reasonably applied clearly established federal law to the facts before it. Id. at 181-182. In other words, the focus of the § 2254(d) inquiry is "on what a state court knew and did." Id. at 182. Where the state court's adjudication is set forth in a reasoned opinion, §2254(d)(1) review is confined to "the state court's actual reasoning" and "actual analysis." Frantz v. Hazey, 533 F.3d 724, 738 (9th Cir. 2008) (en banc). A different rule applies where the state court rejects claims summarily, without a reasoned opinion. In Richter, supra, the Supreme Court held that when a state court denies a claim on the merits but without a reasoned opinion, the federal habeas court must determine what arguments or theories may have supported the state court's decision, and subject those arguments or theories to § 2254(d) scrutiny. Richter, 562 U.S. at 102.

## DISCUSSION

I.   Petitioner's Allegations and Pertinent State Court Record

Petitioner presents a single claim for relief: that his confession was involuntary. The trial

////

court conducted a hearing on petitioner's motion to suppress his statement.[4] The following summary of the pertinent trial court record is taken from the opinion of the California Court of Appeal, Lodged Doc. 1, which the undersigned finds to be accurate.

### Background

Prior to trial, defendant moved to exclude his confession. The trial court reviewed defendant's medical records, videos of the interrogation, and video of defendant's transportation to the police station. We consider the evidence utilized by the trial court in denying defendant's motion.

### The Interview Begins

Officers arrested defendant and transported him to the station. During the ride in the police car, defendant complained about back pain, asked to be helped out of the car, and stated he had nerve damage.

At the station, Detectives Amy Crosby and Andrew Newby began the interview. Defendant was not handcuffed and sat behind a table with water and a box of tissues. Crosby introduced herself and Detective Newby and defendant said he was in pain and asked for his medication. Defendant told detectives he took medicine for a ruptured disc, pain medicine, and medicine to go to sleep.

Crosby told defendant she needed to read him his Miranda rights. The following exchange took place:

Det. Crosby: "[S]ome of those procedures are that I need to read you your Miranda Rights. Okay?

"[Defendant]: Well, then I want a lawyer in her[e].

"Det. Crosby: Okay, you – you don't – you want a lawyer?

"[Defendant]: Yeah, I – I don't know what you guys are trying to do and I – I don't want to answer any questions without a lawyer.

"Det. Crosby: Okay, that's –

"[Defendant]: What – what is the offense you're – what am I being charged with?

"Det. Crosby: Uhm – if you want an attorney, then I can't sit here and talk to you without an attorney present. Okay, so, we're gonna work on getting – uhm – your booking paperwork ready . . . and then we'll let you know . . . what you're being arrested for, okay?

---

[4] The transcript of the hearing is at 1 RT 74-108. The full transcript of the video of the interrogation, which was introduced into evidence at the hearing, is at 2 CT 406-508.

1   "[Defendant]: I just talk –

2   "Det. Crosby: Okay?

3   "Det. Newby: Sir, what – you're saying that you want to talk now without an attorney?

4   "[Defendant]: Let's talk and see what it's about. At least.

5   "Det. Newby: Okay. I mean we – you still have to understand we're gonna have to read you your rights.

6   "[Defendant]: Okay."

Crosby read defendant his Miranda rights. After each advisement, defendant signified he understood. The detectives showed defendant the warrant for his arrest.

**Defendant Denies the Charges**

Defendant, after reading the arrest warrant, said the allegations must have come from his niece and his sister. However, the detectives told him K.F. was the source of the accusations.

Defendant denied molesting K.F. and said his ex-wife had brainwashed her. He said he would not go to prison and threatened suicide. The detectives took a break.

Crosby alone continued the questioning. Defendant talked about giving his daughter back massages and Crosby asked if he had ever beaten K.F. Crosby asked if defendant had given K.F. a pregnancy test or showed her pornography. Defendant denied both.

Newby returned to the interrogation. Crosby told defendant K.F. was "very descriptive during her interview." Crosby said she thought "something happened" and asked defendant to tell her the truth. Defendant again denied molesting K.F.

Cole and Newby told defendant he should apologize to K.F. Newby asked defendant about the recorded phone call. He also asked defendant if his back hurt. Defendant said yes and Newby asked, "What do you think [K.F.] felt like?" Newby accused defendant of acting, saying, "you seem to be crying, but I don't see any tears." Defendant denied he was acting.

**Defendant Admits the Molestations**

The detectives asked if K.F. had lied about the molestation. After defendant began to cry, Crosby told him to take a deep breath and drink water. They continued questioning him, but defendant did not respond. Newby told defendant they would not judge him and wanted to hear his side of the story. He asked defendant when the molestations began, but defendant did not answer.

6

This exchange followed:

"[Defendant]: My foot is really burning.

"(Short Pause)

"[Defendant]: Sorry. I – I go through these pains.

"Det. Newby: Martin, would you like to be done? Do you want to end this now?

"[Defendant]: Yeah.

"Det. Newby: Is this what you want to do? You don't want to tell your side of the story?

"[Defendant]: No.

"Det. Newby: I told you, this is – this is your opportunity. This is what we write down on paper.

"[Defendant]: Right. I know. [¶] . . . [¶]

"Det. Newby: Make us understand.

"(Long Pause)

"Det. Crosby: What is stopping you from talking at this point?

"[Defendant]: Because I don't want to say nothing negative."

Newby reminded defendant they would not judge him, but wanted to hear his side of the story. Asked when the molestation started, defendant said "It wasn't till recent." The detectives asked what happened and defendant said: "Please. I begged [K.F.]," and "I can't do this. I can't do this. I can't do – I can't." Newby told defendant he could tell Crosby what happened and then left the room for about three minutes.

Defendant told Crosby he had begged K.F. to stop, that the molestation did not begin "till recent," and K.F. had been "very aggressive with it." Defendant continued to cry and gave short answers.

Defendant asked to stand up because of his leg. The interrogation continued as he stood up for approximately 10 minutes. Defendant said K.F. would "take off her clothes and get – dance around naked in front of me." He begged her many times to stop, and restrained himself from molesting her "quite a few times." When the detectives asked what sex acts occurred, defendant said that he was going to kill himself and that he would not go to prison. Newby offered to take a break, but defendant wanted to continue.

Defendant said K.F. had been "aggressive" and would "grab me in my privates." When asked if they had vaginal sex, defendant said, "I

7

don't believe it ever . . . She's too small." He stated, "It was more just rubbing, you know, dry." K.F. performed oral sex on him twice, but they did not have anal sex. When asked how frequently the molestations occurred, defendant responded: "I don't know how many times, it was a – maybe a few times that we messed around . . . I just didn't keep count." Defendant later estimated the molestations happened maybe 20 times.

Before leaving the room, the detectives handcuffed defendant so he could not hurt himself. They left him alone for about seven minutes; at this point the interrogation had lasted a little over two hours. Defendant called Newby back in and they spoke for about 10 minutes. Defendant told Newby he wanted his personal property given to his children. Newby left. The interrogation lasted about two and a half hours in total.

**Medical Records**

The trial court reviewed defendant's medical records, specifically those related to a back injury in April 2013. The accident either caused or worsened three bulging discs and one herniated disc. Defendant was prescribed various medications and limited to desk work. In May 2013 doctors changed his medication after defendant complained of pain. There was no medical information between May 2013 and defendant's arrest.

**Trial Court's Ruling**

Defense counsel argued defendant's Miranda waiver was involuntary because he was in a great deal of pain and emotionally unstable. Detectives repeatedly ignored his request for medication. The prosecution contended the detectives were respectful and accommodating regarding defendant's pain. They ceased questioning him when he requested counsel and defendant reinitiated the interrogation by asking what he was charged with.

The trial court denied defendant's motion to exclude his confession. The court found defendant made a knowing, intelligent, and voluntary waiver of his Miranda rights, specifically the right to counsel. According to the court, defendant confessed voluntarily.

The court noted defendant suffered an injury in April 2013 with an original diagnosis of a hamstring pull, a relatively minor injury. A subsequent MRI revealed three bulging discs and nerve compression for which defendant was prescribed a muscle relaxer. Defendant saw doctors in May 2013, complained of continued pain, and was prescribed different medications. The medical records stop in May and defendant was arrested in August.

After reviewing the videos, the court noted defendant did struggle and seemed to experience some pain getting into the police car. The court viewed videos of the interrogation and observed: "It was apparent to me that the Defendant is a fairly emotional person. He was demonstrating -- on a spectrum from low emotion to high emotion, he appeared to be demonstrating high emotion essentially

> throughout the entire process. That included when he was talking about his pain, which causes me to conclude that a portion of his expressions about is pain is influenced not necessarily by the pain but by his emotional response by where he was. I don't believe that he was physically in as much pain as he was verbalizing during the course of the tapes, and that's based upon the fact, as I just mentioned, plus the fact he that he went for lengthy periods of time where he didn't seem to be experiencing any pain. He wasn't making any complaints. He was not verbalizing any pain. He appeared to be deep in thought. He was concentrating. He wasn't moving around, getting up and shifting his weight in the chair."

> The court concluded any pain defendant suffered did not overcome his ability to make a knowing, willing, and intelligent waiver of his rights. The court termed the interrogation "stark" and "pointed", but noted the officers offered defendant a break which he declined. Defendant was given water, but did not ask for any other accommodations. After defendant invoked his right to counsel, the officers took steps to terminate the interrogation. Defendant then reinitiated the conversation and verified he wanted to continue without counsel.

> The court concluded: "I find that there were no circumstances, such as being under the influence of medication, being in undue pain, having no apparent language issue, no unusual fatigue factor, none of the objective factors that might arise to a question as to whether or not the Defendant adequately understood and waived his Miranda rights. I find those to be absent."

Lodged Doc. 1 (ECF No. 19-1) at 3-9.

  II.  <u>The Clearly Established Federal Law</u>

  When a criminal suspect is subjected to custodial interrogation, he must be advised of his rights to remain silent and to have an attorney present during questioning. <u>Miranda v. Arizona</u>, 384 U.S. 436, 479 (1966). These rights may be waived, but absent the required warning and a valid waiver, no evidence obtained as a result of interrogation may be used against the person. <u>Id.</u> To be valid, a waiver of <u>Miranda</u> rights must be voluntary, knowing and intelligent. <u>Id.</u> at 475. "Only if the 'totality of the circumstances surrounding the interrogation' reveals both an uncoerced choice and the requisite level of comprehension may a court properly conclude that the <u>Miranda</u> rights have been waived." <u>Moran v. Burbine</u>, 475 U.S. 412, 421 (1986) (citations omitted).

  Independently of the <u>Miranda</u> issue, due process bars the admission into evidence of involuntary confessions, meaning those obtained by use of coercive interrogation tactics.

Colorado v. Connelly, 479 U.S. 157 (1986). The voluntariness inquiry may include consideration of the suspect's mental state and susceptibility to coercion, but the constitution is not violated unless police engage in objectively coercive conduct. Id. at 163-164; see also Miller v. Fenton, 474 U.S. 104, 109 (1985). Coercion does not require actual physical violence; a credible threat of physical violence is sufficient. Arizona v. Fulminante, 499 U.S. 279, 287 (1991). It is the totality of the circumstances that determines whether a confession was involuntary. Schneckloth v. Bustamonte, 412 U.S. 218, 226 (1973); Dickerson v. United States, 530 U.S. 428, 434 (2000). Relevant circumstances in addition to police overreaching may include the length of the interrogation; its location; its continuity; the defendant's maturity, education, physical condition, and mental health; and failure of police to advise the defendant of his rights to remain silent and have counsel present during custodial interrogation. Withrow v. Williams, 507 U.S. 680, 693-694 (1993) (collecting cases).

### III. The State Court's Ruling

This claim was raised on direct appeal. Because the California Supreme Court denied discretionary review, the opinion of the California Court of Appeal constitutes the last reasoned decision on the merits and is the subject of habeas review in this court. See Ylst v. Nunnemaker, 501 U.S. 797 (1991); Ortiz v. Yates, 704 F.3d 1026, 1034 (9th Cir. 2012).

The court of appeals ruled as follows:

> **Standard of Review**
>
> A valid *Miranda* waiver must be voluntary, knowing, and intelligent. A waiver is voluntary when the defendant gives it by choice and not through intimidation. (*Moran v. Burbine* (1986) 475 U.S. 412, 421 [106 S.Ct. 1135]; *People v. Williams* (2010) 49 Cal.4th 405, 425 (*Williams*).) The voluntariness of a statement is determined by assessing the totality of the circumstances surrounding the interrogation. (*Arizona v. Fulminante* (1991) 499 U.S. 279, 286 [111 S.Ct. 1246].) In the context of the case before us, a waiver need not be wise, nor does the suspect need to be in perfect health in giving the waiver. (*People v. Simpson* (1998) 65 Cal.App.4th 854, 859, fn. 1; *People v. Breaux* (1991) 1 Cal.4th 281, 299-301 (Breaux).)
>
> The People bear the burden of proving the validity of the waiver by a preponderance of the evidence. On appeal, we review the trial court's legal determination de novo and adopt the court's findings of disputed facts if substantial evidence supports them. (*Williams, supra*, 49 Cal.4th at p. 425.)

We must also consider whether the confession itself was voluntary. Both the United States Constitution and the California Constitution forbid the use of a defendant's involuntary confession against him at trial. (U.S. Const., 14th Amend.; Cal. Const., art. I, § 15.) Again, the People bear the burden of proving the voluntariness of a defendant's confession by a preponderance of the evidence. On appeal, we consider the totality of the circumstances surrounding the confession. We uphold a trial court's findings as to the circumstances of the confession if they are supported by substantial evidence. However, we independently review the trial court's finding as to the confession's voluntariness. (*People v. McWhorter* (2009) 47 Cal.4th 318, 346-347 (*McWhorter*); *People v. Markham* (1989) 49 Cal.3d 63, 65, 71.)

A confession is involuntary if it is the product of threat or violence, obtained by direct or implied promises, or secured by the exertion of improper influence. The confession and the inducement must be causally linked. (*McWhorter, supra*, 47 Cal.4th at p. 347.) In considering whether a confession was voluntary, the question is whether the defendant's decision to confess was not freely made because his will was overborne at the time he confessed. (*People v. Holloway* (2004) 33 Cal.4th 96, 114; *People v. Maury* (2003) 30 Cal.4th 342, 404.) In evaluating coercion, we look to the totality of the circumstances surrounding the confession including the characteristics of the accused and the details of the interrogation. In the absence of coercion, the characteristics of the accused cannot render a statement involuntary. (*People v. Hensley* (2014) 59 Cal.4th 788, 814.)

**Miranda Waiver**

Defendant argues his *Miranda* waiver was not knowing, intelligent, or voluntary. According to defendant: "He was in significant pain, but the detectives refused to disclose the charges and ignored his request for medication. By its very nature, this situation was intimidating and coercive; he was trying to absorb what was going on while experiencing great pain."

We disagree. After the detectives introduced themselves they informed defendant that they needed to read him his *Miranda* rights. Defendant said he wanted counsel and the detectives agreed to end the interrogation. Defendant asked what he was charged with and Detective Newby asked if defendant wished to proceed without an attorney. Defendant said yes and he was read his *Miranda* rights.

Detectives did not delay ending the interrogation after he requested a lawyer. Instead, they briefly clarified that he did indeed want counsel. Nor did detectives delay informing him of the charges, as he asserts. Defendant was shown a copy of the arrest warrant right after he was read his *Miranda* rights.

Defendant claims the pain he suffered rendered his waiver unknowing. However, the trial court concluded defendant did not suffer undue pain during the questioning, but exaggerated the pain he was feeling. We find the trial court's factual finding supported by

substantial evidence. (*Williams, supra*, 49 Cal.4th at p. 425.) Although defendant spoke of pain at times, long stretches of the questioning continue without any complaint. Twice defendant mentioned pain immediately following detectives questioning him about the molestation accusations.

The court also reviewed defendant's medical records. The records ended in May 2013; at that point defendant could continue working if allowed to sit at a desk. Defendant was arrested in August 2013. During the interrogation defendant remained seated and only stood when the detectives accommodated his request to stand.

Defendant's physical state differs greatly from that of the defendant in *Breaux, supra*, 1 Cal.4th at p. 301, cited by defendant. In *Breaux* the defendant had not slept for days and was using drugs. He was in the hospital suffering from wounds and injected with morphine. Although he was in pain, the defendant was alert when he waived his *Miranda* rights. (*Id.* at pp. 299-301.) The Supreme Court found the waiver to be voluntary and knowing. (*Id.* at p. 301.) Here, defendant's condition was far more benign and the court's finding is supported by substantial evidence.

**Voluntariness of Confession**

Defendant contends the tactics employed by the detectives exploited his fragile physical and mental state, overbore his will, and produced an unreliable confession which may be false. According to defendant, his confession "has all of the hallmarks of an involuntary confession induced by coercive interrogation." Again, the record supports the trial court's finding that, to the contrary, defendant voluntarily confessed to molesting his daughter.

Detectives Crosby and Newby did not threaten or intimidate defendant. They confronted him with the evidence against him. Defendant knew that under *Miranda* he did not have to respond. The interrogation lasted only two and a half hours. Defendant was given breaks and provided water and tissues.

Defendant asserts the detectives' belief in his guilt made him decide asserting his innocence would be futile. Our review of the interrogation reveals no such coercion. The detectives' questions summarized the evidence against him and challenged his denials.

He also contends the detectives pressured him into believing the interrogation would not end until he confessed. However, both detectives merely urged defendant to tell the truth or confirm or deny his daughter's accusations. Moreover, defendant knew, under *Miranda*, he could end the session.

Finally, defendant argues his physical condition made him vulnerable to coercion. A suspect's mental condition does not render a confession involuntary unless the detectives' coercion brought about the confession. (*People v. Hensley* (2014) 59 Cal.4th 788, 814.) Here, the detectives responded to defendant's physical complaints by

12

> giving him water, telling him to take a deep breath, and offering to take a break.
>
> Nothing in the interrogation supports defendant's claim of coercive conduct by the detectives. The questioning, as the court concluded, was tough, but it was not the product of threat of violence or secured by the exertion of improper influence. (*McWhorter, supra*, 47 Cal.4th at p. 347.)

Lodged Doc. 1 (ECF No. 19-1) at 9-13.

    IV.    <u>Objective Reasonableness Under § 2254(d)</u>

        A. <u>Miranda Waiver</u>

It was not objectively unreasonable of the California Court of Appeal, on the record before it, to conclude that petitioner had validly waived his <u>Miranda</u> rights. Petitioner has identified, and the undersigned has found, no errors in the state court's characterization of the relevant facts, and its application of the law followed U.S. Supreme Court precedent. The court evaluated the totality of the circumstances as they applied both to petitioner's understanding of his rights and to the voluntariness of the waiver. See <u>Moran</u>, 475 U.S. at 421. Petitioner's short-lived invocation of his right to counsel fairly supports the finding that he comprehended his rights. The officers indicated that they would honor that invocation, and petitioner was the one who then reinitiated the conversation. On these facts, there was no unreasonable application of <u>Moran</u>. See <u>Hendricks v. Vasquez</u>, 974 F.2d 1099, 1105 (9th Cir. 1992) (initiation of conversation by suspect after invocation of <u>Miranda</u> rights can be construed as waiver of those rights) (citing <u>Oregon v. Bradshaw</u>, 462 U.S. 1039, 1044 (1983) and <u>United States v. Montana</u>, 958 F.2d 516, 519 (2nd Cir. 1992)).

The state court also reasonably found that the <u>Miranda</u> waiver was not unknowing by virtue of petitioner's physical pain. The facts and circumstances of the interview do not demonstrate that petitioner's physical pain interfered in any way with his comprehension of what was going on. Both state and federal courts have found <u>Miranda</u> waivers valid under circumstances involving far greater physical distress. <u>See</u>, e.g., <u>People v. Breaux</u>, 1 Cal.4th 281, 299-301 (1991) (defendant voluntarily waived <u>Miranda</u> rights while in hospital with gunshot wounds following days of sleep deprivation and drug use); <u>United States v. Lewis</u>, 833 F.2d

1380, 1384-84 (9th Cir. 1987) (waiver voluntary when defendant was in pain from recent surgery); United States v. Mason, 993 F.Supp. 2d 1308 (D. Ore. 2014) (waiver voluntary despite leg injury causing severe pain). Even when a suspect is in extreme pain, the ability to respond coherently and to give responsive answers will support a finding of voluntary waiver. United States v. George, 987 F.2d 1428, 1431 (9th Cir. 1993). In light of this body of law, the state court's decision in this case cannot be considered objectively unreasonable.

### B. Voluntariness of Confession

The California Court of Appeal applied the correct principles of federal law, evaluating the totality of the circumstances and recognizing that coercive police tactics are the *sine qua non* of an involuntary confession. See Connelly, 479 U.S. at 163-164; Dickerson, 530 U.S. at 434. The record before the state court included no factual basis for a finding that the officers had used or threatened violence. See Fulminante, 499 U.S. at 287. Neither did the detectives make any promises or offer any inducements. Indeed, the tactics used to encourage confession in this case fall well within the range of techniques which pass muster under clearly established federal law. Even if the detectives had engaged in affirmative deception (which the record does not show), "deception does not render confession involuntary." United States v. Miller, 984 F.2d n1028, 1031 (9th Cir. 1993) (citations omitted); see also Pollard v. Galaza, 290 F.3d 1030, 1034 (9th Cir. 2004) (misrepresentations do not necessarily constitute coercion). It is widely recognized that "[t]rickery, deceit, even impersonation do not render a confession inadmissible… unless government agents make threats or promises." United States v. Crawford, 372 F.3d 1048, 1060-1061 (9th Cir. 2004) (quoting United States v. Kontny, 238 F.3d. 815, 817 (9th Cir. 2001), citing Frazier v. Cupp, 394 U.S. 731, 739 (1969)). Encouraging a suspect to tell the truth, or suggesting that doing so would benefit him, is not coercion. See Juan H. v. Allen, 408 F.3d 1262, 1273 (9th Cir. 2005) (police stating to the suspect that a "cooperative attitude" would be beneficial does not constitute coercion); Amaya-Ruiz v. Stewart, 121 F.3d 486, 494 (9th Cir. 1997) (encouraging suspect to tell the truth is not coercion). Here the detectives did no more than urge petitioner to tell the truth and to take the opportunity to tell his side of the story before they wrote their report. The finding that this did not amount to coercion is not objectively unreasonable.

As for petitioner's reliance on his alleged degree of physical pain, it is clearly established that there can be no due process violation absent improper police conduct. Connelly, 479 U.S. at 163-164. Because there is no evidence of that here, petitioner's subjective state is not relevant. This is not a case in which officers abusively exploited a known vulnerability to extract a confession—as the Court of Appeals reasonably found, the detectives were relatively accommodating of petitioner's physical needs. The record does not support a conclusion that they overbore a will that was compromised by physical pain.

In the absence of any evidence of threats or promises, the state court's conclusion as to the voluntariness of petitioner's confession cannot be considered an objectively unreasonable application of the governing precedent.

## CONCLUSION

For all the reasons explained above, the state courts' denial of petitioner's claims was not objectively unreasonable within the meaning of 28 U.S.C. § 2254(d). Accordingly, IT IS HEREBY RECOMMENDED that the petition for writ of habeas corpus be denied.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. §636(b)(l). Within twenty-one days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." If petitioner files objections, he shall also address whether a certificate of appealability should issue and, if so, why and as to which issues. See 28 U.S.C. § 2253(c)(2). Any reply to the objections shall be served and filed within fourteen days after service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: August 2, 2023

ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE